UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| CATALINA LONDON LIMITED | CIVIL ACTION |
| VERSUS | DOCKET NO. 11-CV-350 |
| RUST BUSTERS;<br>SOUTHGATE RESIDENTIAL<br>TOWERS, L.L.C.; AND<br>SOUTHGATE PENTHOUSES, L.L.C. | JUDGE BRADY<br><br>MAGISTRATE JUDGE RIEDLINGER |

## RULING ON MOTION TO DISMISS

Before the Court is a motion to dismiss filed by defendants Southgate Residential Towers, L.L.C. and Southgate Penthouses, L.L.C. (collectively, "Southgate") (Doc. 6). Plaintiff Catalina London Limited, formerly known as Alea London Limited ("Catalina"), filed an opposition (Doc. 11, supplemented by Doc. 14), to which Southgate filed a reply brief (Doc. 15) and Catalina filed a sur-reply (Doc. 18). Oral argument is not needed. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 based on diversity of citizenship. See *supra*, Part II.

Catalina seeks a declaratory judgment that its insurance policy with insured Rust Busters does not cover the payments to which Southgate asserts it is entitled to via a default arbitration award in its favor against insured Rust Busters.[1] Catalina also seeks a declaration that it is not required to afford coverage, indemnity, or provide a defense for Rust Busters in an underlying state court action, *Southgate Penthouses, L.L.C. and Southgate Residential Towers, L.L.C. v. MAPP Construction, Inc.*, No. 548,199 (19th Judicial District Court, East Baton Rouge Parish, La.).

---

[1] The complaint and initial memoranda on the motion to dismiss both refer vaguely to "Rust Busters." Southgate does refer to Rust Busters as Rust Busters Painting, L.L.C. once in its memorandum supporting the motion to dismiss. (*See* Doc. 6-2, p. 3). Later, Southgate references service of the state court complaint on Joe Laprairie d/b/a Rust Busters Painting as well as Rust Busters Painting, L.L.C., a Louisiana company. (*See* Doc. 6-6, p. 2; Doc. 15, p. 3). The Court assumes without deciding that all references to "Rust Busters" refers to a Louisiana resident's sole proprietorship and/or a Louisiana limited liability company.

I.

The facts are taken from the pleadings and accompanying attachments. Catalina is a English and Welsh corporation with its principal place of business in England. (Doc. 1, ¶ 1). Catalina issued commercial general liability insurance to Rust Busters. (*Id.*, ¶ 6). The policy, No. ALEA1892, covered the period from September 13, 2003 to September 13, 2004. (*Id.*). Rust Busters served as a subcontractor for MAPP, a general contractor working on a development of apartments and condominiums in Baton Rouge known as Southgate Towers, a development owned by both Southgate defendants. (*Id.*, ¶ 7; Doc. 6-10). The Southgate defendants are both Louisiana limited liability companies with their principal places of business in Louisiana. (Doc. 1, ¶ 3). Southgate eventually sued certain subcontractors and their insurers for construction defects, and two related suits are currently pending in Louisiana state courts.[2] (*Id.*, ¶ 7). An arbitration proceeding was eventually held, wherein Rust Busters failed to appear and received a default judgment against it in the amount of $302,478.97. (*Id.*, ¶ 8). Once Southgate obtained that default judgment, it sent notice to Catalina demanding payment under the policy. (*Id.*, ¶ 9). Southgate also seeks to recover certain defense costs and attorney's fees from Catalina. (*Id.*). Rust Busters also sent a demand letter to Catalina seeking coverage under the policy. (*Id.*, ¶ 10). At the time of the filing of this suit, Catalina had not been made a party to the state court proceedings. (Memo. in Opp. to Motion to Dismiss, Doc. 11, pp. 1-2). A stay had previously prevented action in the state court, but on May 27, 2011, a state appellate court affirmed in part the state district court's lifting of the stay. (Doc. 6-3, Ex. A). The state district judge then allowed Southgate to amend its complaint to add Catalina as a

---

[2] *M&R Drywall, Inc. v. MAPP Construction, L.L.C., et al.*, No. 529,351 Section 8 (19th Judicial District Court, East Baton Rouge Parish, Louisiana); *Southgate Residential Towers, L.L.C. & Southgate Penthouses, L.L.C. v. MAPP Construction, Inc., et al.*, No. 550,534 (19th Judicial District Court, East Baton Rouge Parish, Louisiana). These cases have been consolidated and have been subject to various stays issued by the state district or appellate court.

defendant. (Doc. 15-2, pp. 4-13).

II.

In its motion to dismiss, Southgate denies the existence of subject matter jurisdiction in this Court based on lack of diversity of citizenship. Southgate admits that as currently aligned, the parties are diverse. However, it asserts that a realignment of the parties is required to reflect the "ultimate interests" to be decided by the litigation, such that the Southgate parties are the "true plaintiffs," with Rust Busters and Catalina as the true defendants. Complete diversity in that scenario would not exist since both Southgate and Rust Busters are Louisiana parties.

In resolving a motion to dismiss based of lack of subject matter jurisdiction under Fed. Rule Civ. P. 12(b)(1), the court may ascertain jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). When a Rule 12(b)(1) motion is filed concurrently with another Rule 12 motion, district courts must first consider the jurisdictional issue before addressing another questions on the merits. *Id.*

"In ascertaining the proper alignment of parties for jurisdictional purposes, courts have a duty to look beyond the pleadings, and arrange the parties according to their sides in the dispute." *Griffin v. Lee*, 621 F.3d 380, 388 (5th Cir. 2010) (citation omitted). "[T]he generally accepted test of proper alignment is whether the parties with the same 'ultimate interests' in the outcome of the action are on the same side." *Id.* (citations and quotations omitted). The Court has also stated that "realignment is to be determined according to the principal purpose of the suit and the primary and

controlling matter in dispute." *Lowe v. Ingalls Shipbuilding, A Div. of Litton Systems, Inc.*, 723 F.2d 1173, 1178 (5th Cir. 1984). Southgate argues the dispute in this case relates to the underlying state court actions for construction defects, therefore requiring a realignment of parties to reflect the adversity in those cases – Southgate as plaintiff, suing both the insureds, such as Rust Busters, and their insurers, such as Catalina. Catalina argues the dispute in this case turns on the narrow issue of insurance coverage rather than the broader issues of liability presented by the state court actions.

The Court finds Catalina's argument convincing. The cases Southgate cites for authority do not compel the conclusion that decision on the "ultimate interests" at stake must be made with reference to litigation outside the Court where the matter is pending. Southgate cites *Griffin v. Lee*, 621 F.3d 280 (5th Cir. 2010) as support, but that case deals with the alignment of intervenors, which is not presented here. *Griffin* cites *Lowe v. Ingalls Shipbuilding* as the basis for the "ultimate interests" test. However, *Lowe* looks to the substance of the complaint in the federal action, rather than the mere caption, to decide the realignment question, and therefore it too does not constitute direct authority for Southgate's position. 723 F.2d at 1178. Southgate also cites *Commercial Computer Services v. Datapoint Corp.*, 641 F.Supp. 1579 (M.D.La. 1986) and *Fidelity and Deposit Co. of Maryland v. Sheboygan Falls*, 713 F.2d 1261 (7th Cir. 1983), in addition to Wright, Miller and Cooper, *Federal Practice and Procedure: Jurisdiction 2d*, § 3607 (1984). None of those authorities provides additional guidance on whether the dispute to be inquired into involves solely the federal action's adversity or whether outside facts–namely, the all-encompassing state court action–may help shape the sides of the dispute.

The case coming closest to the facts presented here is *Fireman's Fund Ins. v. Dunlap*, 317 F.2d 443 (4th Cir. 1963). In that case, automobile accident victims were injured by the defendant-insured, and the insurer filed a declaratory judgment action in federal district court against the

insured and the victims, seeking to avoid its contractual duty to defend based on lack of coverage. *Id.* at 444. The insurer premised its lack of coverage assertion on the ground that the insured had not given consent to the driver, who injured the victims, to drive his car. *Id.* The insured agreed with the insurer's assertion of lack of consent regarding the driver. *Id.* The victims had not filed suit when the insurer brought the declaratory action, though they did eventually file their action while the case was on appeal. *Id.* at 446, nn. 1, 4. The Court of Appeals affirmed the district court's realignment of the parties, which placed the insurer and insured on the plaintiff's side against the victims on the defendant's side based on a finding that the coverage dispute between the insurer and insured was nominal *Id.* at 446.

*Dunlap* is distinguishable for several reasons. First, it is far from certain that the insurer and insured agree on anything. Rust Busters has not made an appearance in this case, and it is unlikely that it would agree with the coverage issues Catalina has raised in light of the fact that the arbitration default judgment against Rust Busters for over $300,000.00 would be coming out of its own pocket rather than its insurer's. Second, in this situation the insurer has more colorable claims for non-coverage than the insurer in *Dunlap* did. Third, both the insured and the alleged victims of the insured – Rust Busters and Southgate, respectively – have aligned interests in the narrow matter of insurance coverage now before the Court, whereas only the insurer Catalina has an interest in finding no coverage.

No authority cited by Southgate, and none which the Court could detect, compels inquiry into another suit to determine the primary purpose and ultimate interests involved in the present matter before the Court. The Court declines to expand that inquiry and finds that the aforementioned authorities point to using the substance of the complaint, rather than the mere caption, to determine the interests of the parties and attendant questions on alignment. The complaint makes clear that the

overriding issue to be decided in this litigation is whether Rust Buster's insurance policy covers the dispute between Rust Busters and Southgate. Should its claims ultimately prove successful in the state court litigation, Southgate presumably would prefer to collect from a large insurance company than from a sole proprietorship whose finances are less certain.[3] Rust Busters, of course, would prefer the arbitration judgment to be paid under its insurance policy with Catalina rather than from its own pocket. The primary issue in this litigation, therefore, is a coverage dispute which pits the interests of Catalina against both Rust Busters and Southgate. The Court therefore refuses to realign the parties. Subject matter jurisdiction premised on complete diversity of citizenship under 28 U.S.C. § 1332 is thus established.

### III.

Having concluded that jurisdiction is proper in this case, the Court turns to the other matter before it: whether the Court should use its discretion and decline to hear this declaratory judgment action. The Declaratory Judgment Act, 28 U.S.C. § 2201, provides in part that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration. . . ." (emphasis added). A federal district court is not required to hear these actions, but may exercise its broad discretion and decline to hear the case. *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991). The Fifth Circuit has announced a variety of factors district courts must consider when considering dismissal of a declaratory judgment action, including:

> 1) whether there is a pending state action in which all of the matters in controversy may be fully litigated;
> 2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;

---

[3] Both the entry of the default judgment against Rust Busters in the arbitration proceedings ordered by the state court, and its failure to appear in this matter, suggest Rust Busters might be judgment-proof.

3) whether the plaintiff engaged in forum shopping in bringing the suit;
4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;
5) whether the federal court is a convenient forum for the parties and witnesses;
6) whether retaining the lawsuit in federal court would serve the purposes of judicial economy; and
7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590-91 (5th Cir. 1994).[4] The Court considers each in turn.

There is currently a pending state action in which all matters raised in Catalina's petition may be fully litigated. (*See* Doc. 15-2). While not a party to the state court litigation at the time of the declaratory filing in this Court, Catalina has been made a party now through Southgate's amended complaint in that court. (*Id.*). The state court is fully empowered to make determinations on both insurance coverage, the subject of Catalina's present suit against the defendants herein, as well as the broader liability issues Southgate has asserted against Rust Busters as insured and Catalina as insurer. This factor therefore weighs in favor of dismissal.

Catalina, the declaratory plaintiff, apparently did file suit in anticipation of litigation filed by defendant Southgate. Southgate's demand letter expressly raised the specter of potential litigation. (Doc. 6-4). Catalina references the demand letter as the impetus for this declaratory action. (Doc. 1, ¶ 11). Of course, as with any declaratory judgment action, the specter of other litigation necessarily hangs over this action; otherwise, the necessary "case or controversy" would not be present to bring the matter within the confines of Art. III of the Constitution. Where a dispute exists, the possibility–and potential anticipation–for a race to the courthouse to file first cannot be

---

[4] The *Trejo* Court also discussed the various abstention doctrines related to consideration of a discretionary declaratory judgment dismissal. The parties here did not brief the abstention issues, and the Court finds it unnecessary to consider them in this case. *See Trejo*, 39 F.3d at 390, n.6 (noting that dismissal under the Declaratory Judgment Act is based on less stringent test than *Colorado River* abstention).

disregarded wholly, and thus the existence of this factor, while again favoring dismissal, should receive relatively little weight.

The forum shopping factor is closely linked with the anticipatory filing factor discussed above. Catalina filed this declaratory action for the obvious purpose of receiving faster, less expensive resolution of its dispute with the defendants than it would potentially receive if it has to wait its turn in the large state court action. This reason is certainly understandable, given the morass of parties involved in that case. But it is hard to deny that filing a federal court action at the first sign of potentially being named in a state court action constitutes a type of forum shopping. Whether Southgate had notice of Rust Busters's insurer when it filed its state court suit, or whether that notice came during a period when the stay over the state court litigation was operative, is not for this Court to decide. Catalina had reason to think it would be added to a state court action and proceeded to file a federal court action. The forum shopping factor therefore also weighs in favor of dismissal.

As noted above, Catalina makes no apology for seeking to gain a quicker resolution of this issue by filing in this Court than awaiting its fate in state court. Expediting resolution of the coverage issue, according to Southgate, may prejudice other parties, such as MAPP Construction, Inc., whom Southgate claims is–along with both Southgate entities–an "additional insured" under Rust Busters's policy. (*See* Southgate's Demand Letter, Doc. 6-4). Detailed inquiry into this issue could prejudice a merits determination down the road by this or another Court. It does appear that many other insurance companies of Southgate's subcontractors have been made parties in the state court litigation, and the Court therefore finds that permitting this declaratory action would give Catalina precedence in time and forum over those other insurers whose insureds Southgate alleges in its state court complaint provided shoddy work. This factor again weighs in favor of dismissal.

Inconvenience to the parties and witnesses would be minimal if this action were to proceed.

While this Court would have to adduce a record of evidence, there is little reason to think voluminous numbers of witness would be necessary. The inconvenience to Southgate in having an additional suit would be moderate, and the inconvenience to Catalina in having to wait on the state court adjudication to run its course would be more substantial. Whatever witnesses are necessary for disposition of this case would not have to travel far from the state courthouse to the federal courthouse. This factor therefore weighs against dismissal.

Finally, the Court must consider whether comity and judicial economy would be served by deciding or dismissing this action. This case presents an issue of Louisiana insurance law, not federal law. As the Supreme Court has stated, "[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942). The scarce resources afforded the federal judiciary would not be wisely spent should the Court proceed to decision in this case. The state court proceeding can encompass the claims presented here, and more, with the economies of scale given the sizeable nature of the litigation now proceeding in that court. Piecemeal determinations of insurance coverage by a federal court would still have to be construed and applied in the state court proceeding, whereas it is in a position to make determinations and rulings on a larger scale in the underlying dispute. Comity and judicial economy therefore weighs in favor of dismissal.

Additionally, the Court is called upon to decide whether it must construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit is pending. While Southgate urges that this Court would be required to construe the arbitration proceeding granting the default award in favor of Southgate against Rust Busters, the Court finds

otherwise. The issue of Rust Busters's insurance coverage does not implicate the arbitration award. However, as evidenced by the litany of references to the state courts' orders and judgments in the reply and sur-reply briefs, each party is apparently asking this Court to determine whether the other party violated a stay issued but then lifted by the state district court, which was affirmed in part and reversed in part by the state appellate court, as well as the propriety of the state court allowing Southgate to amend its complaint to add Catalina, among others, as defendants to the state court action. This would simply be improper. Moreover, it weighs in favor of dismissal under the final *Trejo* factor.

IV.

Having considered the arguments presented, the Court finds that the motion to dismiss the Southgate defendants (Doc. 6) must be GRANTED. It is ordered that the declaratory judgment action filed by Catalina London Limited (Doc. 1) must also be DISMISSED under the Court's exercise of discretion pursuant to the Declaratory Judgment Act.

Baton Rouge, Louisiana, <u>September 13, 2011</u>.

JAMES J. BRADY, JUDGE
MIDDLE DISTRICT OF LOUISIANA